**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

SAPNA FOODS, INC.,

    Plaintiff,

             v.

THE OLIVE OIL FACTORY, LLC,

    Defendant.

Civil Action No.
1:23-cv-03749-SDG

## <u>OPINION AND ORDER</u>

This case is before the Court on cross-motions for summary judgment filed by Plaintiff Sapna Foods, Inc. and Defendant The Olive Oil Factory, LLC (TOOF) [ECFs 53, 54]. Because there are numerous genuine disputes of material fact that can only be resolved at trial, the parties' motions are **DENIED**. Further, TOOF's motion to stay [ECF 66] is **DENIED**.

## I.  FACTUAL BACKGROUND[1]

This case is about an allegedly contaminated blend of spices. Sapna is a company specializing in the production and provision of raw ingredients to food manufacturers.[2] Beginning in September 2021, Sapna collaborated with TOOF to develop a specialty spice blend called the "Ancho Chili Krisp Blend" (hereinafter,

---

[1]  Because the parties disagree on almost every fact in this case, the Court provides this summary entirely as background. Facts that are relevant to this Order are discussed in detail later.

[2]  ECF 58, ¶ 1.

the "spice blend").[3] After receiving the spice blend from Sapna, TOOF processed it and combined it with oil to prepare an "Ancho Chili Oil" condiment to sell to one of TOOF's retail customers.[4]

In or about March 2022, TOOF expressed interest in purchasing 150,000 pounds of the spice blend from Sapna.[5] Sapna sent TOOF a written contract with terms for the sale.[6] However, TOOF never signed the written contract.[7] In May 2022, TOOF submitted a purchase order for 75,000 pounds of spice blend, which is not at issue here.[8] Also in May, Sapna provided TOOF with specification sheets for each of the individual ingredients that comprise the spice blend.[9] These specification sheets showed that all but one of the individual ingredients could contain up to 1% foreign or extraneous materials.[10] About a week later, Sapna provided TOOF another specification sheet for the spice blend itself.[11] This specification sheet did not contain any language about the presence of foreign

---

[3]    ECF 59-1, ¶ 1.

[4]    *Id.* ¶ 3.

[5]    *Id.* ¶¶ 5, 6.

[6]    *Id.* ¶ 6.

[7]    ECF 65-2, ¶ 12.

[8]    ECF 58, ¶ 15.

[9]    ECF 59-1, ¶ 16.

[10]    *Id.* ¶ 17.

[11]    ECF 58, ¶ 8.

material in the spice blend.[12] Subsequently, on July 19, TOOF submitted the purchase order at issue in this case (PO 5982) for 150,000 pounds of the spice blend.[13]

From August to October 2022, Sapna delivered, and TOOF received, the spice blend it had ordered via the first purchase order.[14] In December 2022, TOOF notified Sapna that it had found non-edible material in the spice blend it received pursuant to the first purchase order.[15] In early 2023, TOOF further notified Sapna that its retail customer had received complaints from its customers that there were black fibers in the final product.[16]

Nevertheless, on March 13 and 17, 2023, Sapna delivered to TOOF the spice blend ordered via PO 5982.[17] TOOF contends that it also found foreign or extraneous material in this batch, and that in processing it, the spice blend jammed its machinery.[18] Upon TOOF's request, Sapna then sent another specification sheet for the spice blend to TOOF.[19] This updated specification sheet, unlike the original,

---

[12]    *Id.* ¶ 10.

[13]    *Id.* ¶¶ 17, 18.

[14]    *Id.* ¶ 16.

[15]    *Id.* ¶ 25.

[16]    *Id.* ¶ 33.

[17]    *Id.* ¶ 43.

[18]    ECF 59-1, ¶ 33.

[19]    ECF 58, ¶¶ 54, 55.

included a statement that the spice blend could contain up to 1% foreign or extraneous material.[20] On April 24, TOOF informed Sapna that it would no longer accept deliveries of the spice blend.[21]

## II.   PROCEDURAL BACKGROUND

On August 22, 2023, Sapna filed a complaint against TOOF, bringing claims for breach of contract and attorneys' fees, alleging that TOOF breached its contract with Sapna by failing to accept and pay for the spice blend ordered via PO 5982.[22] TOOF failed to timely answer, and a default was entered in September. Shortly thereafter, TOOF appeared in the case and moved to set aside the default, which the Court granted.[23]

TOOF then filed an answer, affirmative defenses, and counterclaims against Sapna for breach of contract and attorneys' fees, alleging that Sapna had breached the parties' agreement by providing hazardous and non-conforming products.[24] After the close of discovery, the parties submitted cross-motions for summary

---

[20]   *Id.* ¶ 55.

[21]   ECF 59-1, ¶ 29.

[22]   ECF 1.

[23]   ECFs 10, 18.

[24]   ECF 19.

judgment.[25] After summary judgment briefing was complete, TOOF also filed a motion to stay.[26]

### III. APPLICABLE LEGAL STANDARD

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" only if it can affect the outcome of the lawsuit under the governing legal principles. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Factual disputes that are irrelevant or unnecessary" are not material. *Id.* A factual dispute is "genuine . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

A party seeking summary judgment has the burden of informing the district court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If a movant meets its burden, the party opposing summary judgment must present evidence showing either (1) a genuine issue of material fact or (2) that the movant is not entitled to judgment as a matter of law. *Id.* at 324. The non-movant "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue

---

[25]  ECFs 53, 54.

[26]  ECF 66.

for trial." *Anderson*, 477 U.S. at 248. If the evidence relied on by the non-movant is "merely colorable, or is not significantly probative, summary judgment may be granted." *Id*. at 249–50 (citations omitted).

The Court views the evidence in the light most favorable to the party opposing summary judgment, "and all justifiable inferences are to be drawn" in favor of that party. *Anderson*, 477 U.S. at 255. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions" and cannot be made by the district court. *Id.* Summary judgment for the moving party is proper "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *see also Anderson*, 477 U.S. at 250 ("The inquiry performed is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.").

## IV.   DISCUSSION

Because this case is laced with a number of genuine disputes of material fact, neither party is entitled to summary judgment. The Court will address the parties' motions separately, viewing the evidence in the light most favorable to the non-movant. As this case involves the sale of goods, Article 2 of Georgia's Uniform

Commercial Code (UCC) applies. O.C.G.A. § 11-2-102(1). Applying the UCC, the evidence in this case is susceptible to multiple interpretations as to the parties' agreement, and so the Court makes no final interpretation of the agreement.

### A.    Sapna's Motion for Summary Judgment

Sapna moves for summary judgment on its claims as well as TOOF's counterclaims. Because there are genuine disputes as to the terms of the parties' agreement and whether Sapna delivered goods that conformed to that agreement, Sapna's motion is denied.

### 1.    Sapna's Breach of Contract Claim

Sapna pursues a breach of contract claim against TOOF for failing to pay for Sapna's delivery of 150,000 pounds of the spice blend pursuant to PO 5982. Sapna seeks to recover the contract price of the spice blend, plus interest and incidental damages, as well as attorneys' fees pursuant to O.C.G.A. § 13-6-11.[27]

Georgia law provides that "[t]o constitute a valid contract, there must be parties able to contract, a consideration moving to the contract, the assent of the parties to the terms of the contract, and a subject matter upon which the contract can operate." O.C.G.A. § 13-3-1. While "the UCC makes contracts easier to form, the general rules governing contract formation still apply." *AgriCommodities, Inc. v. J.D. Heiskell & Co.*, 297 Ga. App. 210, 214 (2009).

---

[27]    *See generally* ECF 1.

As to the parties' mutual assent, "courts apply an objective theory of intent whereby one party's intention is deemed to be that meaning a reasonable man in the position of the other contracting party would ascribe to the first party's manifestations of assent, or that meaning which the other contracting party knew the first party ascribed to his manifestations of assent." *Legg v. Stovall Tire & Marine, Inc.*, 245 Ga. App. 594, 596 (2000) (citation omitted). Where, as here, "the circumstances surrounding the making of the contract, such as correspondence and discussions, are relevant in deciding if there was a mutual assent to an agreement," and such evidence is disputed, "the question of whether a party has assented to the contract is generally a matter for the jury." *Id.* (citations omitted).

The UCC modifies this analysis in at least one important way: "Conduct by both parties which recognizes the existence of a contract is sufficient to establish a contract for sale although the writings of the parties do not otherwise establish a contract. In such case the terms of the particular contract consist of those terms on which the writings of the parties agree, together with any supplementary terms incorporated under any other provisions of this title." O.C.G.A. § 11-2-207(3). In fact, there is no dispute that there was an agreement for TOOF to purchase 150,000 pounds of the spice blend from Sapna.[28] Rather, the parties dispute what

---

[28]  ECF 19, ¶¶ 20, 21 (admitting that Sapna and TOOF "entered into a contract whereby TOOF agreed to purchase from Sapna Foods, Inc. 150,000 pounds of [the spice blend]" and that "[t]he Agreement is a valid and enforceable contract

additional terms were part of their agreement. Viewing the evidence in the light most favorable to TOOF as the non-movant, there are at least three genuine disputes of material fact that preclude summary judgment in Sapna's favor on its claims: (1) whether the parties agreed to the terms of the written contract attached to the complaint as Exhibit A;[29] (2) whether the parties' agreement permits foreign material in the spice blend, and if so how much; and (3) whether the spice blend delivered by Sapna conformed to the parties' agreement.

First, there is a genuine dispute as to whether the parties agreed to the terms of the written contract attached to the complaint as Exhibit A.[30] It is undisputed that TOOF did not sign Exhibit A.[31] Exhibit A also contains a different price term than PO 5982, which is the subject of Sapna's claim.[32] While it appears that PO

---

and was entered into for good and valuable consideration."). "The general rule is that a party is bound by the admissions in his pleadings," and "facts judicially admitted are facts established not only beyond the need of evidence to prove them, but beyond the power of evidence to controvert them." *Cooper v. Meridian Yachts, Ltd.*, 575 F.3d 1151, 1177–78 (11th Cir. 2009) (cleaned up). In any case, this conclusion is also supported by the undisputed facts.

[29]   ECF 1-1. Sapna also submitted Exhibit A in support of its motion for summary judgment at ECF 53-3.

[30]   While TOOF admitted in its pleadings that it entered into an agreement with Sapna, it is unclear whether that admission was meant to include the terms of Exhibit A. *See* ECF 19, ¶ 10 (denying that TOOF consented to the terms of Exhibit A). In light of the evidence, the Court concludes that there is a genuine dispute on this point.

[31]   ECF 65-2, ¶ 12.

[32]   *Compare* ECF 53-3, Ex. A, ¶ 2, *with* ECF 54-18.

9

5982 was issued after the parties exchanged Exhibit A, it does not reference Exhibit A,[33] and so a reasonable juror could conclude that TOOF did not agree to the terms of Exhibit A and instead issued PO 5982 as a counteroffer, which was accepted by Sapna's delivery of the spice blend. *See* O.C.G.A. § 11-2-206(1).[34] Thus, Sapna has not shown as a matter of law that TOOF agreed to the terms of Exhibit A. Accordingly, for purposes of this Order, the terms of the parties' agreement "consist of those terms on which the writings of the parties agree, together with any supplementary terms incorporated under any other provisions of" the UCC. *Id.* § 11-2-207(3).

Second, there is a genuine dispute as to whether the parties' agreement permits foreign material in the spice blend, and if so, how much. Neither PO 5982 nor Exhibit A define the contents of the spice blend. There is some evidence that

---

[33] ECF 54-18 (PO 5982 dated July 19, 2022).

[34] O.C.G.A. § 11-2-206(1) provides that:

Unless otherwise unambiguously indicated by the language or circumstances:

(a) An offer to make a contract shall be construed as inviting acceptance in any manner and by any medium reasonable in the circumstances;

(b) An order or other offer to buy goods for prompt or current shipment shall be construed as inviting acceptance either by a prompt promise to ship or by the prompt or current shipment of conforming or nonconforming goods, but such a shipment of nonconforming goods does not constitute an acceptance if the seller seasonably notifies the buyer that the shipment is offered only as an accommodation to the buyer.

TOOF was informed that the spice blend could contain up to 1% foreign material, though the parties dispute the extent of TOOF's knowledge.[35] It is also undisputed that Sapna never represented to TOOF that the spice blend would be free of foreign material.[36] However, the specification sheet for the spice blend that Sapna sent to TOOF prior to TOOF's issuance of PO 5982 contains no mention of foreign material,[37] and so a reasonable juror could also conclude that the parties' agreement was silent on this point. Determining whether the parties agreed to a particular amount of allowable foreign material requires an inquiry into the meaning a reasonable person in Sapna's position would ascribe to TOOF's manifestations of assent, or vice versa.[38] Because that evidence is disputed, the

---

[35]   ECF 60-1, ¶¶ 16–20.

[36]   *Id.* ¶ 22.

[37]   ECF 65-2, ¶ 9.

[38]   The UCC also "makes admissible evidence of course of dealing, usage of trade and course of performance to explain or supplement the terms of any writing stating the agreement of the parties in order that the true understanding of the parties as to the agreement may be reached." *Scovill Fasteners, Inc. v. N. Metals, Inc.*, 303 Ga. App. 246, 250 (2010). "Usage of trade" is defined as "any practice or method of dealing having such regularity of observance in a place, vocation, or trade as to justify an expectation that it will be observed with respect to the transaction in question," and "[t]he existence and scope of such a usage must be proved as facts." O.C.G.A. § 11-1-303(c).

While there is evidence that the U.S. Food and Drug Administration's (FDA) regulations permit up to 1% foreign material in bulk dried spices, the parties dispute the scope and applicability of that regulation here. ECF 60-1, ¶¶ 42–44, 47. There is also evidence that the American Spice Trade Association's (ASTA) guidelines permit up to 0.5% foreign material, *id.* ¶¶ 45–46, 48, but it

Court cannot determine as a matter of law the allowable amount of foreign material in the spice blend.

Third, even assuming *arguendo* that the parties' agreement permits some amount of foreign material in the spice blend, there is a genuine dispute whether the spice blend delivered by Sapna conformed to the parties' agreement. Under the UCC, "if the goods or the tender of delivery fail *in any respect* to conform to the contract, the buyer may . . . [r]eject the whole." O.C.G.A. § 11-2-601 (emphasis added). Such "[r]ejection of goods must be within a reasonable time after their delivery or tender," and "[i]t is ineffective unless the buyer seasonably notifies the seller." O.C.G.A. § 11-2-602(1). Because the Court previously concluded there is a genuine dispute as to whether the terms of Exhibit A were incorporated into the parties' agreement, Exhibit A's requirement that rejection be made within 24 hours is not binding for purposes of this Order.[39] *See* O.C.G.A. § 11-1-302(a) ("[T]he effect of provisions of [the UCC] may be varied by agreement."). Instead, the UCC's default rule applies, and TOOF was obligated to reject the Ancho Blend shipped

---

is not clear as a matter of law that these guidelines are so regularly observed as to qualify as a usage of trade under the UCC. Also, the variance between the FDA and ASTA standards suggest that there is a difference between what is permitted by law and what is recommended in the industry, such that the amount of foreign material allowed by the parties' agreement remains a disputed question of fact.

[39]   ECF 53-3, Ex. A, ¶ 6.

12

pursuant to PO 5982 within a reasonable time after delivery. "Whether a buyer rejected goods within a 'reasonable time after their delivery' and seasonably notified the seller of the rejection is ordinarily a question of fact for determination by a jury under all of the facts and circumstances of the case." *SPS Indus., Inc. v. Atl. Steel Co.*, 186 Ga. App. 94, 98 (1988). The Court cannot say that, given the facts and circumstances of the case, the approximately 2 weeks that TOOF took to reject the spice blend were unreasonable as a matter of law.

Because a reasonable juror could conclude that TOOF timely rejected the spice blend, the Court must consider whether the spice blend failed to conform to the parties' agreement in any respect, thereby permitting rejection. Critically here, because there is evidence that TOOF timely rejected the spice blend, the burden of proving that the spice blend conformed to the parties' agreement is on Sapna. *See First Union Nat. Bank of Ga. v. J. Reisbaum Co.*, 190 Ga. App. 234, 235 (1989) (where the defendant raised the issue of nonconformity, the plaintiff-seller had the burden to come forward with evidence establishing its entitlement to summary judgment); *see also Miron v. Yonkers Raceway, Inc.*, 400 F.2d 112, 119 n.17 (2d Cir. 1968) ("[N]on-acceptance, consisting of attempted rejection within a reasonable time after delivery or tender, amounts to rightful rejection if the seller fails to prove that the goods conform, but is a breach if the seller proves conformity."); 2 *Lawrence's Anderson on the Uniform Commercial Code* § 2-106:42 (3d. ed.) ("[T]he

seller has the burden of proving that goods were conforming when the buyer refuses to accept the goods because of a nonconformity.") (citing *J. Reisbaum Co.*); 4 *Anderson*, *supra*, § 2-607:21 ("Where goods failed to conform and a timely notice of rejection has been given the burden remains on seller to prove that it performed the contract by producing and delivering conforming goods.") (collecting cases).[40]

Sapna's evidence on this point consists of the testimony of Brian Witbracht, a consultant employed by TOOF.[41] Witbracht testified as follows:

> [Sapna] Q. . . . How many pounds of foreign or extraneous material does TOOF claim was found in the Ancho Blend shipped as part of purchase order number 5982?
>
> [Witbracht] A. I really don't know, Dan, especially when you start talking about weight. Because the extraneous material was typically fluffy and light and balled up. So weighing less than 1 percent. But they haven't gone through all of it. I mean -- I don't know that they couldn't

---

[40] One of the UCC's stated purposes is "[t]o make uniform the law among the various jurisdictions." O.C.G.A. § 11-1-103(a)(3). In accordance with this purpose, Georgia courts consider persuasive authority from other jurisdictions. *Ole Mexican Foods, Inc. v. Hanson Staple Co.*, 285 Ga. 288, 289 (2009). Georgia courts have also regularly relied on the *Anderson* treatise in interpreting the UCC. *See, e.g.*, *Dixie Amusement, LLC v. Primero Games, LLC*, 373 Ga. App. 614, *passim* (2024) (citing *Anderson*), *reconsideration denied* (Nov. 12, 2024), *cert. denied* (May 28, 2025).

[41] ECF 60-1, ¶¶ 38, 50. Sapna also points out that TOOF has not presented evidence of its own that the foreign material content in the spice blend was greater than 1%, *see id.* ¶¶ 38, 49, but as stated above TOOF does not have the burden of proof on this element on Sapna's breach of contract claim.

> have found it -- never mind. Somebody could have found
> a cannon ball in it and then it would go over 1 percent.[42]

Witbracht's testimony is subject to multiple interpretations. On the one hand, he acknowledges that TOOF did not find foreign material in the spice blend weighing more than 1% of the total. However, he also acknowledges that TOOF did not test the entire amount, such that his estimate may or may not be accurate. Sapna has the burden of proof on this issue as it relates to its breach of contract claim, and so the Court must view Witbracht's testimony in the light most favorable to TOOF. Because "the question of whether goods are nonconforming is a question of fact," *Esquire Mobile Homes, Inc. v. Arrendale*, 182 Ga. App. 528, 529 (1987), and the interpretation of the evidence on this point is subject to genuine dispute, Sapna is not entitled to summary judgment.

Given that there are factual disputes as to the terms of the parties' agreement as well as the parties' compliance with those terms, it is unnecessary to proceed further on Sapna's breach of contract claim.

### 2.  Sapna's Claim for Attorneys' Fees

Because Sapna is not entitled to summary judgment on its breach of contract claim, neither is it entitled to summary judgment on its claim for attorneys' fees pursuant to O.C.G.A. § 13-6-11. Recovery of attorneys' fees under § 13-6-11 is

---

[42]  ECF 53-7, Witbracht Dep. Tr. at 145:10–21.

15

allowed where: (1) "there exists no bona fide controversy or dispute regarding liability for the underlying cause of action," *David G. Brown, P.E., Inc. v. Kent*, 274 Ga. 849, 850 (2002); (2) "the contract was entered into in bad faith by the defendant in the first instance, or was procured by fraud and deceit," *Glen Rest., Inc. v. West*, 173 Ga. App. 204, 205 (1984); or (3) the defendant breached the contract "as a result of some sinister motive," *id.* The relevant conduct is that "arising from the transaction underlying the cause of action being litigated, not conduct during the course of the litigation itself." *Kent*, 274 Ga. at 850. The foregoing factual disputes preclude summary judgment in Sapna's favor on its claim for attorneys' fees.

### 3.    TOOF's Counterclaims for Breach of Contract and Attorneys' Fees

TOOF brings counterclaims against Sapna for breach of contract and attorneys' fees, alleging that Sapna breached the parties' agreement by delivering non-conforming goods, causing TOOF to lose income from sales of the resulting oil blend.[43] Sapna seeks summary judgment on these claims as well, arguing that TOOF has no evidence that the spice blend delivered by Sapna pursuant to PO 5982 failed to conform to the parties' agreement or that TOOF was damaged by any non-conformity.

---

[43]    *See generally* ECF 19.

The Court previously concluded that there is a genuine dispute as to whether the parties' agreement permits foreign material in the spice blend, and if so how much. Viewing the evidence in the light most favorable to TOOF, a reasonable juror could conclude that the parties' agreement was silent as to the amount of allowable foreign material, and that the spice blend delivered pursuant to PO 5982 contained some amount of foreign material.[44] Thus, resolution of TOOF's breach of contract claim will require a jury to determine whether or how much foreign material was allowed in the spice blend by the parties' agreement, and whether the foreign material actually found in the spice blend exceeds that amount.

The Court also concluded that there is a genuine dispute as to whether the parties agreed to the terms of Exhibit A, and therefore Exhibit A's limitation on Sapna's liability is not binding for the purposes of this Order.[45] The UCC provides that, where the buyer rightfully rejects or justifiably revokes acceptance of goods delivered by the seller, the buyer may recover damages for nondelivery, including incidental and consequential damages. O.C.G.A. §§ 11-2-711(1)(b), 11-2-713(1). In discovery, TOOF served a document summarizing its damages prepared by

---

[44]   ECF 65-2, ¶ 45.

[45]   ECF 53-3, Ex. A, ¶ 8.

Witbracht.[46] Witbracht testified that the damages asserted in the document were estimates, and those estimates were based on his conversations with TOOF employees, as well as his experience in the industry.[47] Regardless of whether the damages themselves are supported by documentary evidence, as Sapna argues, there is no reason TOOF's damages cannot be supported by oral testimony from witnesses with personal knowledge.

TOOF has come forward with some evidence supporting the elements of its breach of contract counterclaim, and therefore Sapna is not entitled to summary judgment. Sapna's motion does not make any independent argument as to TOOF's counterclaim for attorneys' fees, and therefore the Court does not address it.

For all of these reasons, Sapna's motion for summary judgment is denied.

### B.    TOOF's Motion for Summary Judgment

TOOF also moves for summary judgment on its counterclaims as well as Sapna's claims, on three bases: (1) the parties' agreement lacked consideration; (2) the products delivered by Sapna in March 2023 were properly rejected by TOOF; and (3) Sapna, by delivering nonconforming goods, breached the implied warranties of merchantability and fitness. While TOOF's briefing does not clearly delineate which of its arguments are directed towards Sapna's claims versus its

---

46   ECF 65-2 ¶¶ 50, 51; *see also* ECF 60-1, ¶¶ 65–70.

47   *See id.*

own counterclaims, this is ultimately immaterial, because no party is entitled to summary judgment. That said, the Court will address the first two arguments as to Sapna's claims, and the third argument as to TOOF's counterclaims. As with Sapna's motion, genuine disputes of material fact preclude summary judgment in TOOF's favor.

### 1. Sapna's Claims for Breach of Contract and Attorneys' Fees

First, TOOF contends that the parties' agreement lacked consideration and was therefore invalid, because Sapna delivered products that were of no value; so, the theory goes, Sapna cannot recover on its breach of contract claim. However, this argument does not hold. "Georgia law requires that 'a performance or a return promise must be bargained for by the parties to a contract' for there to be valid consideration." *Lyle v. Liberty Cap., LLC*, No. 1:14-CV-03375-ELR, 2015 WL 13333851, at *4 (N.D. Ga. June 2, 2015) (citing O.C.G.A. § 13-3-42(a)). At the very least, and whether in the form of a written agreement, a purchase order, or something else, it is undisputed that the parties made mutual promises that Sapna would deliver 150,000 pounds of spice blend to TOOF and that TOOF would pay for it. "Failure to pay the consideration promised, although it constitutes a breach, does not render the conveyance invalid for lack of consideration." *Slaick v. Arnold*, 307 Ga. App. 410, 412 (2010). Even if Sapna did not fulfill its contractual promise by failing to provide an uncontaminated spice blend, "that failure would be

19

properly characterized as a breach, rather than a lack of consideration which voids the contracts at issue." *Lyle*, 2015 WL 13333851, at *4.

Second, TOOF's argument that it properly rejected the spice blend delivered pursuant to PO 5982 depends on the disputed issue of whether the spice blend conformed to the parties' agreement. The UCC permits a buyer to reject goods if they "fail in any respect to conform to the contract." O.C.G.A. § 11-2-601. It is undisputed that the parties agreed for Sapna to deliver 150,000 pounds of the spice blend to TOOF, even though TOOF did not sign Exhibit A. *See Doss & Assocs. v. First Am. Title Ins. Co.*, 325 Ga. App. 448, 452 (2013) ("'[A]ssent to the terms of a contract may be given other than by signatures.' And 'assent may be implied from the circumstances,' and the conduct of the parties.") (citations omitted). But the evidence here permits multiple interpretations as to what terms the parties agreed on, and "[w]here such extrinsic evidence exists and is disputed, the question of whether a party has assented to the contract is generally a matter for the jury." *Legg,* 245 Ga. App. at 596.

Sapna has submitted evidence from which a reasonable juror could conclude that the agreement did in fact allow for the presence of some foreign material in the spice blend. There is evidence that, in May 2022, Sapna sent additional specification sheets to TOOF regarding the spice blend's individual ingredients, which showed that the individual ingredients could contain up to 1%

20

foreign material.[48] Around two months after receiving these specification sheets, TOOF issued PO 5982.[49] Sapna has further submitted evidence that TOOF's own expert agreed in deposition testimony that these individual specification sheets put TOOF on notice that the presence of some foreign or extraneous material in the spice blend should be expected:

> [Sapna] Q. You would agree with me that Sapna advised TOOF that the [spice blend] and all of its subingredients other than sea salt could contain up to 1 percent foreign or extraneous material by weight.
>
> [Witbracht] A. I do agree with that.[50]

Viewed in the light most favorable to Sapna as the non-movant, a reasonable juror could infer that if the individual components of the spice blend could contain up to 1% foreign material, the spice blend could too, and thus the parties' agreement permitted the presence of that much foreign material.

There is also a genuine factual dispute as to how much foreign material, if any, was actually in the spice blend, such that TOOF cannot show as a matter of law that the amount of foreign material exceeded any limit that could be inferred

---

[48]  ECF 59-1, ¶¶ 16, 17. TOOF disputes whether the individual ingredient specification sheets submitted by Sapna in support of summary judgment are the same specification sheets it sent to TOOF on May 11, 2022, presenting yet another factual dispute. *See id.*

[49]  ECF 58, ¶¶ 17, 18.

[50]  ECF 59-1, ¶ 18.

from the evidence. TOOF has submitted evidence, including photographs, indicating the presence of foreign material in the spice blend.[51] However, based on the timeline of when TOOF actually inspected the spice blend at issue and discovered the foreign material, Sapna disputes the authenticity of these photographs, and asserts that some of these photographs actually depict spice blend from previous orders not at issue in this litigation.[52] Further, TOOF has not presented any evidence that it gathered, weighed, or tested any of the foreign material present in the spice blend, such that the exact amount and identity of any foreign material found in the spice blend is unknown.[53] Thus, there is a genuine dispute as to how much, if any, foreign material was present in the spice blend.

In light of these factual disputes, TOOF has not shown as a matter of law that its rejection of the spice blend ordered via PO 5982 was proper, and so it is not entitled to summary judgment on Sapna's breach of contract claim. TOOF's motion does not make any independent argument as to Sapna's claim for attorneys' fees, and therefore the Court does not address it.

---

[51]   *See, e.g.*, ECF 54-49.

[52]   ECF 59-1, ¶¶ 35, 37.

[53]   *Id.* ¶ 38.

### 2. TOOF's Counterclaims for Breach of Contract and Attorneys' Fees

TOOF's briefing indicates that it is seeking summary judgment on its own counterclaims based on Sapna's alleged breaches of the implied warranties of merchantability and fitness for a particular purpose. However, the foregoing factual disputes preclude summary judgment on TOOF's counterclaims as well. Under the UCC, a warranty of merchantability is implied in contracts for the sale of goods if the seller is a merchant with respect to those goods, unless the parties agree otherwise. O.C.G.A. § 11-2-314(1). To be merchantable, the goods in question must "[p]ass without objection in the trade under the contract description," among other things. *Id.* § 11-2-314(2)(a). The UCC also provides for an implied warranty of fitness for a particular purpose, which arises where "the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods," unless the parties agree otherwise. *Id.* § 11-2-315.

Here, there are genuine disputes of material fact as to Sapna's alleged breaches of the implied warranties. The factual disputes referenced throughout this Order preclude a common "contract description" as to whether the spice blend could contain a certain amount of foreign material, such that it is not clear as a matter of law that Sapna's delivery would not pass without objection in the trade. Similarly, those same factual disputes underly the question of whether the

23

furnished spice blend was suitable for TOOF's purposes. Accordingly, TOOF is not entitled to summary judgment on these claims.

Lastly, as with Sapna's claim for attorneys' fees, the foregoing factual disputes preclude summary judgment in TOOF's favor on its counterclaim for attorneys' fees.

### C.    TOOF's Motion to Stay

After summary judgment briefing was complete, TOOF moved to stay this litigation, asserting that an FDA employee conducted an unplanned inspection of its facilities on May 20, 2025, discovered foreign material in the spice blend, and informed TOOF that the government would need to open an investigation.[54] TOOF requests a stay pending the resolution of the FDA's investigation. However, TOOF has not shown that a stay is warranted here.

"When deciding whether to grant a stay, courts generally consider the following factors: (1) whether a stay would unduly prejudice or present a tactical disadvantage to the nonmovant; (2) whether a stay will simplify the issues in the case; and (3) whether discovery is complete and a trial date [has] been set." *Tomco Equip. Co. v. Se. Agri-Sys., Inc.*, 542 F. Supp. 2d 1303, 1307 (N.D. Ga. 2008).

A stay will not simplify the issues in this case. It is unclear how an FDA inspection in 2025 would tend to make it more or less likely that the parties agreed

---

[54]    *See generally* ECF 66.

to permit a certain amount of foreign material in the spice blend, or that the spice blend delivered in March 2023 failed to comply with that agreement. This evidence has been available to the parties throughout the case, either in their own possession or through the discovery process. That the FDA might come to its own conclusion at some undetermined point in the future does not merit a stay. Further, discovery in this case is complete, and the next step is trial. Accordingly, TOOF's motion to stay is denied.

## V.    CONCLUSION

The parties' cross-motions for summary judgment [ECFs 53, 54] are **DENIED**. TOOF's motion to stay [ECF 66] is **DENIED.**

Sapna and TOOF are **DIRECTED** to submit a joint proposed consolidated pretrial order within 30 days of the date of this Order. Sapna and TOOF are further **ADVISED** to file any necessary Leave of Absence notice on the docket within 30 days of the date of this Order, as a pretrial conference and trial will be scheduled thereafter without further notice.

The Clerk is **DIRECTED** to resubmit this Order to undersigned after 30 days.

**SO ORDERED** this 31st day of March, 2026.

_____
Steven D. Grimberg
United States District Judge